OPINION OF THE COURT
PER CURIAM.
Petitioners Auw Priyanto and Erna Set-iawati seek review of final orders of re *751 moval in this consolidated appeal. For the reasons that follow, we will deny the petitions for review.
Priyanto and Setiawati are both ethnic Chinese Christians and citizens of Indonesia. Both entered the United States on visitor visas, Priyanto in 2001 and Setiawa-ti in 2002, and overstayed. The couple married in the United States and have one child who was born in the United States. In November 2003, the Government served the couple with notices to appear. Both conceded removability and sought asylum, withholding of removal, relief under the Convention Against Torture (“CAT”), and voluntary departure.
I.
A. Priyanto
Priyanto claimed that he had been subjected to persecution in Indonesia on account of his religion and ethnicity. To support this claim, he offered testimony about the following events: 1) When he attended elementary school, Muslim students demanded that he buy them food, and on one occasion beat him up. His parents complained to the school’s principal, and there were no further beatings, though the students continually called him derogatory names; 2) He was once mugged by several Muslims while riding on a bus. He claimed that the mugging began after some of the passengers on the bus realized that he was Chinese. After the mugging, he complained to the bus driver, who did not yell at or chase the perpetrators, though he did drop off Pri-yanto in the police district; 3) He once bought doughnuts and complained to the Muslim store owner about them. The store owner called him an ethnic slur, pulled a knife, and threw the doughnuts at him; and 4) On several occasions while walking to church, Muslims would call him names and spit on him.
Priyanto also argued that he would be subjected to further persecution if he were to return to Indonesia. To support this argument, he noted the riots of 1998, as well as other events showing the extent of anti-Chinese sentiment in Indonesia. He also relied on the country’s recent earthquakes, which he claimed had increased unemployment and encouraged Muslims to demand money from the ethnic Chinese. In addition, he presented the 2001 and 2005 Country Reports for Indonesia. He testified that members of his family still live in Indonesia, and admitted that none have been harmed since he came to the United States.
The Immigration Judge (“IJ”) found Priyanto credible, but denied all substantive relief and allowed voluntary departure. The Board of Immigration Appeals (“BIA”) affirmed. First, the BIA found that Priyanto was ineligible for asylum because he had filed his application more than one year after he had entered the United States and had not shown extraordinary circumstances sufficient to excuse the delay of filing. See 8 U.S.C. § 1158(a)(2)(B) & (D). Second, the BIA found that Priyanto was not eligible for withholding of removal because the incidents of harassment that he described did not rise to the level of persecution. In addition, the BIA found that he had failed to show a clear probability that he would be persecuted if he were to return to Indonesia. Finally, the BIA found that Priyanto was not eligible for relief under the CAT because he had not shown that he is more likely than not to be tortured upon return to Indonesia.
B. Setiawati
Setiawati also claimed that she had been persecuted in Indonesia on account of her religion and ethnicity, and that she would *752 be subjected to further persecution if she were to return. To support this claim, she offered testimony about the following events: 1) She was teased in elementary school because of her ethnicity; 2) When she was a child, her dog was killed. She suspected Muslim neighbors of the killing; 3) When Muslims would walk past her house on the way to a nearby mosque, they would yell racial epithets at her and, on one occasion, demanded that she turn down the volume on her television; 4) One day, while returning to her home on a motorcycle, she drove through a crowd of people whom she believed to be Muslim. Members of the crowd yelled at her, though she was not harmed; and 5) She once worked in a church that received an anonymous bomb threat. Police later recovered the bomb, which failed to detonate.
Setiawati also argued that she would be persecuted if she were to return to Indonesia. Like Priyanto, she supported her argument by relying on the 1998 riots, the social consequences of the recent earthquakes, and other events motivated by anti-Chinese sentiment. In addition, she noted the 2003 and 2005 Country Conditions Reports for Indonesia.
The IJ found Setiawati credible, but denied all substantive relief and allowed voluntary departure. The IJ found that Set-iawati’s asylum application, which she had filed more than one year after entering the country, was timely because she had originally filed as a derivative to Priyanto’s 2003 asylum application. Nevertheless, the IJ determined that she was ineligible for asylum because none of the events that she described rose to the level of persecution. The IJ also found that she had not established that she would be persecuted in the future. Likewise, the IJ found that she was ineligible for withholding of removal and relief under the CAT. The BIA affirmed without opinion.
C. Jurisdiction
We have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1). In Priyanto’s case, the BIA issued an opinion that “invoke[ed] specific aspects of the IJ’s analysis and fact-finding” to support its conclusion; therefore, we will review both decisions. Voci v. Gonzales, 409 F.3d 607, 612-13 (3d Cir.2005). In Setiawati’s case, because the BIA affirmed without opinion, we will review the IJ’s decision. Sukwanputra v. Gonzales, 434 F.3d 627, 631 (3d Cir.2006). We review the BIA’s findings of fact regarding claims of past persecution and well-founded fears of future persecution under “the deferential substantial evidence standard.” Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir.2006).
II.
In their consolidated petition for review, Priyanto and Setiawati challenge only the findings that they did not suffer past persecution and did not have a well-founded fear of future persecution and were thus ineligible for asylum (in Setiawati’s case) and withholding of removal (in both cases). Priyanto does not challenge the BIA’s decision that his asylum application was untimely,[1] and the parties do not challenge their ineligibility for relief under the CAT. Accordingly, we will not consider those claims.
A. Setiawati’s asylum claim
“Persecution includes threats to life, confinement, torture, and economic restrictions so severe that they constitute a *753 threat to life or freedom,” Wong v. Att’y Gen., 539 F.3d 225, 232 (3d Cir.2008) (internal quotations omitted), but it does not “encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional,” Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir.1993).
An applicant can demonstrate entitlement to asylum on the basis of persecution in one of two ways. First, an applicant can provide credible testimony that he or she had been persecuted in the past. See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir.2004). Setiawati testified to several instances of what she deemed to be past persecution because of her religion and ethnicity. She argues that these events, taken cumulatively, constitute persecution.[2] We find that there was substantial evidence to support Id’s conclusion that these events were not extreme enough to satisfy the standard for persecution. See Wong, 539 F.3d at 232; Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir.2005).
The second way that an applicant can obtain asylum is by showing that he or she has a well-founded fear of future persecution upon return to the country of removal. The applicant can make this showing by demonstrating that either “she would be individually singled out for persecution” or “that there is a pattern or practice in his or her country of nationality ... of persecution of a group of persons similarly situated to the applicant.” Wong, 539 F.3d at 232. Setiawati does not attempt to demonstrate that she will be singled out for persecution upon return to Indonesia; instead, she attempts to establish a pattern-or-practice claim. She supports her argument by pointing to attacks against Chinese Christians in Indonesia and the 2003 and 2005 Country Reports for Indonesia. The IJ rejected this argument, noting that the 2005 Country Report states that the Indonesian government supports tolerance of all religions and has taken steps to end discriminatory laws in the country. We find that this was a valid basis to reject Setiawati’s claim. See Wong, 539 F.3d at 234. Therefore, she is not entitled to asylum.[3]
B. The withholding of removal claims
An applicant seeking withholding of removal “must establish a ‘clear probability’ ... that he/she would suffer persecution” if returned to the country of removal. Ghebrehiwot v. Att’y Gen., 467 F.3d 344, 351 (3d Cir.2006). This standard is higher than the standard governing asylum claims. Id. Accordingly, Setiawati’s request for withholding of removal necessarily fails because her request for asylum failed. See Id.
Priyanto testified to several instances of what he deemed persecution at the hands of Muslims, including a beating, a robbery, and name-calling. The BIA found that these events did not rise to the level of persecution. We find substantial evidence in the record to support the BIA’s decision. See Wong, 539 F.3d at 232; Lie, 396 F.3d at 536. To support his argument that he had a well-founded fear of persecution, Priyanto, like Setiawati, noted the attacks against ethnic Chinese Christians in Indonesia. He also submit *754 ted the 2001 and 2005 Country Reports for Indonesia. The BIA rejected this claim, noting that Priyanto’s family has continued to live in Indonesia without incident. We find this to be a valid basis to reject Priyanto’s claim. See Wong, 539 F.3d at 236. Accordingly, we find that Priyanto did not establish eligibility for withholding of removal.
III.
For the foregoing reasons, we will deny the petition for review.

. We ordinarily lack jurisdiction to review the BIA’s conclusion that an asylum application was untimely. See Sukwanputra, 434 F.3d at 633.

. The Government argues that Setiawati failed to raise this argument in her brief and therefore waived judicial review of the issue. However, Setiawati did challenge the BIA's finding that she had not suffered past persecution. Accordingly, she preserved the issue for judicial review.

. Setiawati argues that Chinese Indonesians are a significantly disfavored group and thus must meet a comparably low standard of individualized risk to show a well-founded fear of persecution. We have already rejected that argument. See Lie, 396 F.3d at 538 n. 4.